UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KRISTA J. BRANDON,

        Plaintiff,        Civil Action No. 20-10253
                                     Honorable Robert H. Cleland
v.                                 Magistrate Judge Elizabeth A. Stafford

QUICKEN LOANS, INC.,

        Defendant.
_____/

## REPORT AND RECOMMENDATION TO
## GRANT DEFENDANT'S MOTION TO DISMISS [ECF NO. 10]

### I.    INTRODUCTION

Plaintiff Krista Brandon, proceeding *pro se*, sues Defendant Quicken Loans, Inc., alleging vicarious liability for the conduct of a Quicken employee, and negligence in hiring and maintaining his employment. [ECF No. 1]. The Honorable Robert H. Cleland referred the case to the undersigned for all pretrial matters under 28 U.S.C. § 636(b)(1). [ECF No. 16]. Quicken Loans moves to dismiss Brandon's complaint and the briefing on the motion is complete. [ECF No. 10; ECF No. 14; ECF No. 17].

The Court **RECOMMENDS** that Quicken Loans' motion to dismiss be **GRANTED**.

## II. FACTUAL BACKGROUND

In June 2019, Brandon entered her contact information on a Quicken online mortgage calculator. [ECF No. 1, PageID.5]. Days later, she was "contacted via phone by 'Aaron,' an employee of Quicken Loans." [*Id.*]. Brandon told the employee that "it wasn't a good time to talk" and "politely tried to end the call, but the employee continued to "talk to [her] about his product." [*Id.*]. Brandon asked the employee to remove her from the Quicken call list and hung up. [*Id.*]. A few minutes later, she received the first of many offensive messages from "Quicken's text messaging system." [*Id.*]. One message that said, "I'm the coward but I have your address," made Brandon cry and fear speaking. [*Id.*]. She then called "the Quicken 1-800 number" and spoke to a "customer service supervisor" and an "investigator on Rock Security." [*Id.*]. That evening, Brandon "wasn't able to sleep or rest to be able to go to work." [*Id.*] She claims that the incident caused her immense mental and emotional distress, and that she is in constant fear for her and her family's safety. [*Id.*].

Brandon alleges that Quicken is vicariously liable to her for its employee's assault and intentional infliction of emotional distress, and is directly liable for negligence in the vetting and hiring the employee. [*Id.*]. Moving to dismiss, Quicken contends that Brandon cannot establish the

elements of vicarious liability nor the employee's underlying intentional torts under Tennessee law. [ECF No. 10, PageID.51-56]. Quicken adds that Brandon alleges no facts suggesting that it knew or should have known that its employee would send inappropriate texts. [*Id.*, PageID.58-59]. The Court agrees and recommends that Brandon's complaint be dismissed under Federal Rule of Civil Procedure 12(b)(6).

### III. ANALYSIS

#### A.

A motion to dismiss under 12(b)(6) tests a complaint's legal sufficiency. *See Mayer v. Mulod*, 988 F.2d 635, 638 (6th Cir. 1993). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The *Iqbal* Court explained, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In deciding whether a plaintiff has set forth a "plausible" claim, the Court must construe the complaint in the light most favorable to the plaintiff and accept as true all well-pleaded factual allegations. *Id*.

Pleadings filed by *pro se* litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers, but such complaints still must plead a plausible claim for relief. *Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007); *Davis v. Prison Health Services*, 679 F.3d 433, 437-38 (6th Cir. 2012).

**B.**

A federal court exercising diversity jurisdiction applies the choice-of-law rules of the state in which it sits. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941). Michigan holds that its law applies "unless a 'rational reason' to do otherwise exists." *Sutherland v. Kennington Truck Service, Ltd*., 454 Mich. 274, 286 (1997). A court must apply a two-step approach to decide whether to apply Michigan law or the law of another state. *Id.* First, the court "must determine if any foreign state has an interest in having its law applied." *Standard Fire Ins. Co. v. Ford Motor Co.*, 723 F.3d 690, 693 (6th Cir. 2013) (internal quotation omitted). Second, "[i]f a foreign state does have an interest in having its law applied, [the court] must then determine if Michigan's interests mandate that Michigan law be applied, despite the foreign interests." *Id*.

In *Standard Fire*, the court held that Tennessee law applied. *Id*. at 693-699. The case involved insurance companies suing a Michigan-based

4

car manufacturer in a Michigan federal court to recover payments the companies made to their Tennessee insured after his car caught fire in Tennessee. *Id.* at 692. The Sixth Circuit held that Tennessee had a substantial interest in having its law applied because it was both the place of the injury and the insured's home state. *Id.* at 693-698. Tennessee's obvious and substantial interests in applying its law outweighed Michigan's interest as the forum state and location of defendant's headquarters. *Id.* at 698-699.

Brandon is also a Tennessee resident and she was at her home when the Quicken employee allegedly made the rude and threatening statements to her by phone and text messaging. Tennessee has an obvious and substantial interest in applying its law that outweighs Michigan's interest, even though Michigan is the forum state and is where Quicken is headquartered. *Id*. at 693-699. As a result, Tennessee law applies to Brandon's claims.

## C.

Tennessee law holds employers vicariously liable for the torts their employees commit while acting within the scope of their employment. *Ellington v. Cajun Operating Co.*, 2021 WL 507888, at *4 (Tenn. App. Feb.

10, 2021). "Typically, whether an employee acted within the scope of his or her employment is a question of fact." *Id.*  But Brandon cannot show vicarious liability unless Quicken's employee would be subject to individual liability. *Wildasin v. Mathes*, 2016 WL 1436458, at *1 (M.D. Tenn. April 12, 2016).   For the reasons below, Brandon does not state viable claims that the Quicken employee engaged in assault or intentional infliction of emotional distress, so her vicariously liability claim fails.

### 1.

Assault is "any act tending to do corporal injury to another, accompanied with such circumstances as denote at the time an intention, coupled with the present ability, of using actual violence against that person." *Thompson v. Williamson County, Tenn.*, 965 F. Supp. 1026, 1037 (M.D.Tenn.1997) (internal quotation omitted).  "This definition requires an intentional act creating a reasonable apprehension of imminent physical harm on the part of the plaintiff." *Dowlen v. Mathews*, 2003 WL 1129558, at *2 (Tenn.App. 2003).  A mere threat to commit an assault with no physical effort is not an assault. *Baker v. Moreland*, 1989 WL 89758, at *6 (Tenn.App., Aug. 9, 1989).

Brandon's assault claim relies on a text message in which a Quicken's employee said he knew Brandon's address.  [ECF No. 1,

6

PageID.5]. Accepting as true that this message was implicitly threatening, she does not state a claim for assault. Brandon does not allege that the employee did anything violent towards her or even that he had the present ability to endanger her. With no allegation that the Quicken's employee physically did anything to cause Brandon to have a reasonable apprehension of imminent physical harm, her assault claim is not viable.

**2.**

To state a claim for intentional infliction of emotional distress based on the Quicken employee's conduct, Brandon must allege that (1) the conduct was intentional or reckless; (2) the conduct was so outrageous that civilized society cannot tolerate it; and (3) it caused Brandon a serious mental injury. *O'Dell v. O'Dell*, 303 S.W.3d 694, 697 (Tenn.App. 2008). Brandon must show that the conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id*. (citation and quotation marks omitted). "To say that Tennessee courts narrowly define 'outrageous conduct' would be something of an understatement." *Z.J. v. Vanderbilt Univ.*, 355 F. Supp. 3d 646, 685 (M.D. Tenn. 2018) (citation and quotation marks omitted).

Here, though the Quicken employee's aggressive words were

7

condemnable, they did not amount to outrageous conduct that cannot be tolerated by society. To the contrary, with limited exceptions, society accepts that its members may use rude and aggressive language without legal consequence, especially when the statements are made from a distance over the phone or by electronic messages. And relevant here, under Tennessee law, insults and threats like those Brandon alleges do not support an intentional infliction of emotional distress claim. *Lemon v. Williamson Cty. Sch.*, ___ S.W.3d ___, No. M201801878SCR11CV, 2021 WL 57957, at *12 (Tenn. Jan. 7, 2021).

Thus, while this Court does not condone conduct like that Brandon describes, that conduct does not fit within the narrow definition of outrageous conduct required to state a claim under Tennessee law.[1]

### D.

Brandon alleges that Quicken's negligence in hiring the employee who contacted her caused the incident at issue. [ECF No. 1, PageID.5]. "Under Tennessee law, a plaintiff may recover for negligent hiring, supervision, or retention of an employee if he establishes, in addition to the elements of a negligence claim, that the employer had knowledge of the

---

[1] If Brandon intended to assert an intentional infliction of emotional distress claim directly against Quicken for its conduct in responding to the incident, that claim would fail for the same reasons.

8

employee's unfitness for the job." *Turnage v. Oldham*, 346 F. Supp. 3d 1141, 1158 (W.D. Tenn. 2018).  To state a viable claim for negligent hiring or supervision, a plaintiff must allege that the employer knew or should have known that the employee was unfit to perform the expected work.  *Id.*

Brandon fails to state a claim of negligent hiring because she makes "mere conclusory statements," unsupported by facts.  *Id.* (citation and quotation marks omitted).  She contends in her response to the motion to dismiss that discovery may reveal that the Quicken's employee had a "pattern of instability."  [ECF No. 17, PageID.95].  But to survive Quicken's motion to dismiss, Brandon must allege plausible facts in her complaint.  *Ashcroft*, 556 U.S. at 678.  Her complaint alleges no plausible facts to support her negligent hiring claim, so it should be dismissed.

### IV. CONCLUSION

The Court **RECOMMENDS** Quicken Loans' motion to dismiss [ECF No. 10] be **GRANTED** and Brandon's complaint [ECF No. 1] be **DISMISSED**.

Dated: February 22, 2021

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

9

## **NOTICE TO THE PARTIES ABOUT OBJECTIONS**

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party fails to timely file specific objections, any further appeal is waived. *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991). And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains. Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

    The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 22, 2021.

                                      s/Marlena Williams
                                      MARLENA WILLIAMS
                                      Case Manager